IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASON D. SCHRINER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. CIV-23-206-D |
| TERRY L. GERARD, *et al.*, | ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is the RXO (XPO) Defendants' Motion to Dismiss and Brief in Support [Doc. No. 58].[1] Plaintiff filed a Response in opposition [Doc. No. 64], to which RXO replied [Doc. No. 69]. The matter is fully briefed and at issue.

### BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiff brought this action in state court asserting various claims against various defendants, all of which stem from a car accident in Lincoln County, Oklahoma on January 23, 2021. Plaintiff alleges that Defendant Terry Gerard was driving a tractor-trailer when he left the road and struck Plaintiff's vehicle, which was located on the shoulder of the road. Mr. Gerard timely removed the case to federal court based on diversity of citizenship.

---

[1] In its Motion, RXO states "XPO NLM, Inc., XPO, Inc., XPO Logistics Freight, Inc., and XPO Logistics, Inc., were not parties to the broker contract between RXO NLM, L.L.C. (at the time XPO NLM, L.L.C., a non-party), the broker, and Defendant Flextronics Automotive USA, Inc. ("Flextronics"), the customer." RXO Mot. at 5. Accordingly, RXO "concedes that it was the broker for the freight contract that was being delivered by Gerard at the time of the subject accident." *Id*. In his Response, Plaintiff does not contest RXO's assertion regarding the incorrectly named XPO entities. The Court will, therefore, dismiss XPO NLM, Inc., XPO, Inc., XPO Logistics Freight, Inc., and XPO Logistics, Inc. without prejudice.

In the operative Complaint, Plaintiff has named the following Defendants: (1) Terry L. Gerard; (2) Century Trucking, Inc.; (3) Flextronics Automotive USA, Inc.; (4) XPO NLM Inc.; (5) XPO, Inc.; (6) XPO Logistics Freight, Inc.; (7) XPO Logistics, Inc.; and (8) RXO NLM, LLC.[2] Compl. [Doc. No. 44], ¶¶ 4-10. Relevant for purposes of the instant Motion, Plaintiff asserts two claims against RXO: (1) vicarious liability based on numerous theories (agency, statutory employer, and joint venture) and (2) negligence in selecting the motor carrier for the freight shipment. *See id.*, ¶¶ 40-52.

To support his vicarious-liability claim, Plaintiff alleges RXO and Century "worked in concert to book loads" and that the two "were de jure and de facto a motor carrier relative to Defendant Gerard and the Vehicle [he] was using." *Id.*, ¶¶ 40, 41. Plaintiff also alleges that a principal-agent relationship existed between RXO and "Defendants Gerard/Century" and that Mr. Gerard was "[RXO's] agent/statutory employee as [RXO] exercised control over him with respect to the trip Defendant Gerard was on at the time of the collision." *Id.*, ¶ 42. Plaintiff further alleges that RXO is "responsible for Defendant Gerard's actions because it was in a joint venture relationship with Defendant Century." *Id.*, ¶ 44.

To support his negligent-selection claim, Plaintiff alleges RXO "promised a shipper called Defendant Flextronics to arrange for transportation of a load." *Id.*, ¶ 46. Plaintiff alleges RXO "had duties to protect the public that included, but were not limited to" the following:

> (1) allowing only a Driver that is covered by insurance to transport the Load,
> (2) allowing only a Truck that is covered by insurance to be used to transport

---

[2] Plaintiff is proceeding under the Sixth Amended Complaint [Doc. No. 44]. In this Order, the Court refers to the Sixth Amended Complaint as the "Complaint."

> the Load, (3) hiring a motor carrier that was vetted for safety and compliance with the Federal Motor Carrier Safety Act, FMCSRs, and other statutory and common laws, (4) hiring a motor carrier that would use team driving to transport the Load, (5) prohibit the involvement of any chameleon carrier/driver activity in the transportation of the Load, and (6) disallowing any Driver to transport the Load that Defendant [RXO] knew or should have known would be distracted from devoting full time and attention to driving.

*Id.*, ¶ 47. Plaintiff further alleges RXO breached the above-quoted duties and that "Defendant Gerard was incompetent to drive a commercial motor vehicle, Defendant Century was incompetent to operate as a commercial motor carrier, and Defendant [RXO] knew or should have known Defendant Gerard/Century were incompetent." *Id.*, ¶¶ 48, 49.

## STANDARD OF DECISION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court will accept as true all well-pled factual allegations and construe them in the light most favorable to Plaintiff. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it does need "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Instead, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action" does not provide grounds of a party's entitlement to relief. *Twombly*, 550 U.S. at 555.

3

"[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id.*; *see also id.* ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (citation omitted)). Courts may "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

In addition to challenging the sufficiency of Plaintiff's factual allegations, RXO also raises a legal challenge based on the doctrine of federal preemption. The legal sufficiency of a complaint is properly decided under Rule 12(b)(6), and federal preemption is a legal issue. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The legal sufficiency of a complaint is a question of law, and a Rule 12(b)(6) dismissal is reviewed de novo."); *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1096 (10th Cir. 2017) ("Thus, we ordinarily consider preemption as a legal issue subject to de novo review."). "The party claiming preemption bears the burden of showing with specificity that Congress intended to preempt state law." *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255 (1984)); *see also Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010).

## DISCUSSION

RXO moves to dismiss the two claims—vicarious liability and negligent selection—asserted against it in the Complaint. After addressing an initial dispute as to the status of RXO, the Court addresses each claim in turn.

I.      **According to the allegations set forth in the Complaint, RXO is a broker, not a motor carrier.**

Before addressing the preemption issues raised in RXO's Motion, Plaintiff first argues that whether RXO is a freight broker—as opposed to a motor carrier—is a disputed fact question "that is conceded nowhere in [his] . . . Complaint." *See* Pl.'s Resp. at 9. Because the Complaint "does not even use the term broker," Plaintiff contends that determining "whether RXO acted as a motor carrier entails a fact-driven inquiry that requires discovery." *Id.*

RXO, on the other hand, argues that "Plaintiff's intentionally vague pleading cannot save a preempted claim because the alleged facts, not the semantics, determine the claims." RXO Reply at 2. "Plaintiff is clear that Defendant Century is the motor carrier employing Defendant Gerard at the time of the alleged collision." *Id.* And "Plaintiff is equally clear that the RXO entities were brokers for the load." *Id.* Therefore, according to RXO, to "find that RXO [is a] motor carrier[], this Court would have to reject Plaintiff's alleged facts outlining [its] role as broker[] in favor of his bare conclusions declaring [it a] potential motor carrier[]." *Id.*

Plaintiff's argument falls flat for two reasons. First, Plaintiff cannot skirt around the looming preemption issue through the use of artful pleading. Even a cursory review of the Complaint reveals that, for the specific transaction at issue, Plaintiff alleges Century is the motor carrier, while RXO is the freight broker. *Compare* Compl., ¶ 35 ("As a motor carrier, Defendant Century . . . ."), *with id.*, ¶ 46 (alleging RXO "arrange[d] for transportation of a load"), *and id.*, ¶ 47 (alleging RXO had certain duties, including the hiring of a motor

5

carrier). "A defendant may be either a motor carrier or a broker, but it cannot be both in the same transaction." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 579 (D. Md. 2022). Plaintiff's attempt to muddy the waters through artful pleading is apparent and unpersuasive. *See Mays v. Uber Freight, LLC*, No. 5:23-CV-00073, 2024 WL 332917, at *3 (W.D.N.C. Jan. 29, 2024) (rejecting plaintiffs' contention that Uber was actually a motor carrier instead of a broker because, among other things, there was "no indication that Uber actually held itself out as a carrier or that it exercised control over [the driver] other than Plaintiffs' conclusory allegations in the Complaint").

Second, and for the reasons fully set forth in the Court's Order on Defendant Flextronics Automotive USA, Inc.'s ("Flex") Motion to Dismiss, *see* 8/13/2024 Order [Doc. No. 71], Plaintiff fails to plead sufficient factual allegations to state a claim against RXO. The Court will not permit Plaintiff to plead factually deficient claims with the hope of discovering information that might, in Plaintiff's view, support those claims. *See Ryland v. Blue Cross Blue Shield Healthcare Plan of Ga.*, No. CIV-19-807-D, 2019 WL 7195610, at *3 (W.D. Okla. Dec. 26, 2019) ("Plaintiff cannot use discovery as a fishing expedition in the hopes of supporting a claim that does not pass muster at the pleading stage."); *see also Hamby v. Wilson*, No. 6:23-cv-249-JDK, 2024 WL 2303850, at *6 (E.D. Tex. May 21, 2024) ("As mentioned, Plaintiffs argue that the complaint leaves open whether J.B. Hunt was the broker or motor carrier for the load at issue, and that the Court should therefore deny J.B. Hunt's motion to dismiss the negligent brokering claim at this stage of the case. The Court disagrees. If J.B. Hunt was the broker, then the claim should be dismissed as preempted, as discussed above. If, on the other hand, J.B. Hunt was the motor carrier,

then the claim should be dismissed for failure to state a claim. Either way, dismissal of the negligent brokering claim is appropriate under Rule 12(b)(6)." (internal citation omitted)).

The Court, therefore, rejects Plaintiff's invitation to bypass the preemption issue and proceeds with the analysis set forth below.

## II.  Plaintiff's claims against RXO are expressly preempted by § 14501(c)(1) of the FAAAA and do not fall within the safety exception in § 14501(c)(2)(A).

Congress enacted the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA") to protect freight shipments from state regulations as follows:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). As referenced in subsection (c)(1), and relevant for purposes of deciding the instant Motion, subsection (c)(2)(A) provides for a narrow, potentially relevant exception to the breadth of (c)(1):

> **Paragraph (1) . . . shall not restrict the safety regulatory authority of a State with respect to motor vehicles**, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]

49 U.S.C. § 14501(c)(2)(A) (emphasis added). Based on these two subsections, the Court's analysis proceeds in two parts: (1) whether Plaintiff's claims against RXO are expressly preempted by § 14501(c)(1) of the FAAAA; and, if so, (2) whether Plaintiff's claims

7

against RXO are saved from federal preemption by the safety exception found in § 14501(c)(2)(A).

### A. Plaintiff's claims against RXO are expressly preempted by § 14501(c)(1).

Due to parallel language in the statutes, courts follow caselaw interpreting the Airline Deregulation Act, 49 U.S.C. § 1305(a)(1), to determine the scope of the FAAAA. *See Rowe v. N.H. Motor Trans. Ass'n*, 552 U.S. 364, 370 (2008); *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013).

Congress's use of words "related to" a price, route, or service expresses a broad preemptive purpose "and embraces state laws 'having a connection with or reference to' carrier [or broker] 'rates, routes, or services,' whether directly or indirectly." *See Dan's City Used Cars*, 569 U.S. at 260 (quoting *Rowe*, 552 U.S. at 370 (internal quotation omitted)). "At the same time, the breadth of the words 'related to' does not mean the sky is the limit." *Id.* The Supreme Court has "cautioned that § 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id.* at 261 (internal quotation omitted).

In *Loyd v. Salazar*, 416 F. Supp. 3d 1290 (W.D. Okla. 2019), the Court thoroughly analyzed the preemptive scope of § 14501(c)(1). There, the plaintiff sued a freight broker and asserted the broker was negligent in its selection of a motor carrier to transport property. *Id.* at 1292. In the end, as it related to preemption under § 14501(c)(1), the Court concluded that the plaintiff's "allegations directly relate to the services [the freight broker] provided as a broker in the transportation of property." *Id.* at 1298. Therefore, the plaintiff's claim was "expressly preempted by § 14501(c)(1) of the FAAAA." *Id.*

8

At the time the Court decided *Loyd*, no circuit court had addressed the preemptive scope of § 14501(c)(1). The natural question now is what, if anything, has changed since the Court decided *Loyd*? Since *Loyd*, three circuits have addressed the issue, and all three have concluded that state-law negligence claims are expressly preempted by § 14501(c)(1). *See Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020) (holding that state-law negligence claim was "related to" broker services and, therefore, preempted by § 14501(c)(1)); *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261 (11th Cir. 2023) (holding that § 14501(c)(1) "expressly preempts" state-law negligence claim against a "transportation broker"); *Ye v. GlobalTranz Enterprises, Inc.*, 74 F.4th 453 (7th Cir. 2023) (holding that state-law negligent hiring claim was "expressly preempted by § 14501(c)(1)").

Upon consideration of the developments described above, the Court sees no reason to depart from its analysis and the conclusion reached in *Loyd*. In this case, Plaintiff claims that RXO is liable for his injuries based on its negligent selection of Century as the motor carrier for the freight shipment that Mr. Gerard was hauling. *See* Compl., ¶¶ 46-52. Plaintiff specifically alleges that RXO, as a freight broker, had "duties to protect the public that included, but were not limited to" hiring a competent and compliant motor carrier. *See id.*, ¶ 47. Plaintiff further alleges RXO breached those duties, and, as a result of RXO's breach, Plaintiff was injured. *See id.*, ¶ 49. The Court finds that Plaintiff's allegations "directly relate to the services [RXO] provided as a broker in the transportation of property." *Loyd*,

9

416 F. Supp. 2d at 1298. Thus, Plaintiff's claims are expressly preempted by § 14501(c)(1) of the FAAAA.[3]

## B. Plaintiff's claims against RXO are not saved by the safety exception in § 14501(c)(2)(A).

Although the Court concludes that Plaintiff's claims are expressly preempted by § 14501(c)(1) of the FAAAA, the Court's analysis is not finished. Plaintiff's claims "may be saved by one of several provisions excluding claims from § 14501(c)(1)'s broad reach." *Ye*, 74 F.4th at 460. Plaintiff invokes the safety exception in § 14501(c)(2)(A), which protects a state's "safety regulatory authority . . . with respect to motor vehicles." In *Loyd*, the Court concluded that applying § 14501(c)(2)(A)'s safety exception to a negligent-brokering claim would be "contrary to Congress' intent in providing specific exceptions to

---

[3] The Court rejects Plaintiff's argument that his vicarious-liability claim should be treated differently than his direct negligent-selection claim. It appears the majority of district courts that have addressed the issue post-*Miller*, *Aspen American*, and *Ye* have declined to treat a plaintiff's vicarious-liability claim differently than a direct negligence claim for purposes of FAAAA preemption. *See, e.g.*, *Lee v. Golf Transp., Inc.*, No. 3:21-CV-01948, 2023 WL 7329523, at *13 (M.D. Penn. Nov. 7, 2023) ("Therefore, the Court finds that enforcing laws upon a broker for vicarious liability, for negligent hiring/supervision/ retention/selection/entrustment of a driver, and for joint venture would have a significant direct impact upon the services rendered by a broker and hinder the objectives of the FAAAA. Accordingly, the Court finds that Plaintiffs' claims against [the broker] are preempted under the FAAAA."); *Tischauser v. Donnelly Transp., Inc.*, No. 20-C-1291, 2023 WL 8436321, at *4 (E.D. Wis. Dec. 5, 2023) ("In addition to their negligent hiring and vicarious liability claims, Plaintiffs brought Wisconsin common law tort claims for joint enterprise/venture. However, all common law claims have the force and effect of law. And each of Plaintiffs' claims here 'would have a significant economic effect on broker services,' just as the negligent hiring claim in *Ye* would have. Accordingly, Plaintiffs' claims against [Broker] are preempted by the FAAAA."); *Mays*, 2024 WL 332917, at *4 ("Plaintiff alleges that Uber 'either operated or had the right to exercise control over drivers and equipment it employed to transport goods it had contracted to ship and, on the date and time alleged above, did in fact exercise control over defendant Polishchuk.' The Complaint makes no factual allegations regarding that control and so the Court cannot find that such control plausibly existed." (internal citation omitted)).

10

federal preemption; such a broad reading would allow the exception to swallow the rule of preemption related to brokers' services." 416 F. Supp. 3d at 1299.

Plaintiff acknowledges the Court's decision in *Loyd* but asks the Court to reassess it "in light of new precedents." Pl.'s Resp. at 15 (emphasis removed). Specifically, Plaintiff states "*Loyd* was decided before the first circuit opinion on the preemption issue, *Miller* . . . ." *Id.* at 15-16. *Miller*, Plaintiff contends, "significantly influenc[ed] subsequent court decisions," with the "overwhelming majority of district courts [finding] that the plaintiff's claim is not preempted." *Id.* at 16-17.

In response, RXO acknowledges the Ninth Circuit's decision in *Miller* but contends that the Court should instead follow the Seventh Circuit and Eleventh Circuit in concluding that a common law negligence claim does not fall within the safety exception. *See* RXO Reply at 5 (citing *Ye* (Seventh Circuit) and *Aspen American* (Eleventh Circuit)). These decisions, RXO contends, "are well reasoned and applicable to the facts presently before this Court." *Id.* at 8.

In *Miller*, C.H. Robinson Worldwide, Inc.—a freight broker—selected Kuwar Singh d/b/a RT Service to transport goods for Costco Wholesale, Inc. 976 F.3d at 1020. While transporting the load in Nevada, the driver lost control of the tractor-trailer and collided with Allen Miller. *Id.* Mr. Miller sued, among others, C.H. Robinson and alleged that it breached its duty to "'select a competent contractor to transport' Costco's load 'by retaining incompetent, unfit or inexperienced contractors or sub-haulers to arrange and/or take th[e] load.'" *Id.* at 1020-21 (quoting Mr. Miller's amended complaint). C.H. Robinson moved for judgment on the pleadings, arguing that the FAAAA preempted Mr. Miller's negligence

11

claim. *Id.* at 2021. The district court granted the motion, finding that the negligence claim was expressly preempted and did not fall within the safety exception. *Id.*

In a 2-1 decision, the Ninth Circuit reversed. After concluding that the plaintiff's negligence claim was "related to" broker services and thus fell within § 14501(c)(1), the majority addressed the safety exception. It determined that the "safety regulatory authority of a State" encompasses common-law tort claims, and negligence claims against brokers that stem from motor-vehicle accidents are "with respect to motor vehicles." *Id.* at 1026-31. However, as noted above, *Miller* was not unanimous. In his dissent, Judge Ferdinand F. Fernandez took issue with the majority's conclusion regarding the safety exception.[4] Specifically, Judge Fernandez would have held that the claim against the freight broker "does not amount to one under 'the safety regulatory authority of a State with respect to motor vehicles,'" as the services a broker "provides have no direct connection to motor vehicles or their drivers." *Id.* at 1031.

In *Aspen American*, a shipper, Tessco Technologies, Inc., hired Landstar Ranger, Inc., a transportation broker, to arrange for the transportation of cargo. 65 F.4th at 1265. Landstar selected L&P Transportation LLC to transport Tessco's shipment, but Tessco's shipment was ultimately stolen by a fraudster after Landstar failed to follow its usual protocol when dispatching a shipment. *Id.* Tessco filed a claim with its insurer, Aspen American Insurance Company, who in turn paid the claim and sued Landstar for negligent selection of a motor carrier. *Id.* The district court dismissed Aspen American's suit as

---

[4] Judge Fernandez concurred with the majority's holding that Miller's claim was expressly preempted by the FAAAA.

expressly preempted by § 14501(c)(1) and determined that the claim was not saved by the safety exception. *Id.*

In affirming the district court's express preemption ruling, a unanimous Eleventh Circuit panel emphasized that Aspen American's claim was not part of the "'general' universe of common-law tort claims that could arise within the domestic supply chain," but instead asserted "specific allegations of negligence and gross negligence against a transportation broker for its selection of a motor carrier to transport property in interstate commerce." *Id.* at 1268. And in affirming the district court's safety exception ruling, the court rejected Aspen American's argument that the nature of a plaintiff's claim—property loss versus bodily injury—should determine whether the safety exception applies. Rather, the court concluded that it "makes little sense for the safety exception to turn on whether a plaintiff seeks damages for property loss or bodily injury—the common law negligence standard is the same no matter the damages a breach has caused." *Id.* at 1269. The court further concluded that the phrase "'with respect to motor vehicles' limits the safety exception's application to state laws that have a *direct* relationship to motor vehicles." *Id.* at 1271. Aspen American's broker-negligence claims, however, were only "indirect[ly] connect[ed]" to motor vehicles. *Id.* at 1272. The safety exception, therefore, did not save Aspen American's claims. *Id.*

In *Ye*, Ying Ye's husband was killed in a highway accident after his motorcycle was hit by a truck driven by an individual working for Global Sunrise, Inc. 74 F.4th at 456. Before the accident, GlobalTranz Enterprises, a freight broker, had arranged for Global Sunrise to transport goods for a third party. *Id.* Ms. Ye sued GlobalTranz and asserted

13

claims for negligent hiring and vicarious liability. *Id.* GlobalTranz moved to dismiss the claims, and the district court treated the motion as one for judgment on the pleadings. *Id.* In granting the motion as to Ms. Ye's negligent-hiring claim, the district court found the claim was expressly preempted by the FAAAA and not saved by the safety exception. *Id.*

In affirming the district court's preemption ruling, a unanimous Seventh Circuit panel first noted that Ms. Ye's negligent-hiring claim "has much more than a tenuous, remote, or peripheral relationship to broker services." *Id.* at 459. Instead, the "relationship is direct, and subjecting a broker's hiring decisions to a common-law negligence standard would have significant economic effects." *Id.* And in affirming the district court's safety exception ruling, the court emphasized that § 14501(c)(2)(A) contains no mention of "brokers or broker services," which stands in stark contrast to § 14501(c)(1)'s specific reference to broker services. *Id.* at 461. The court likewise emphasized the practical realities surrounding Ms. Ye's negligent-hiring claim:

> That brings us back to Ye's claim. Absent unusual circumstances, the relationship between brokers and motor vehicle safety will be indirect, at most. No better example than Ye's complaint. She alleged that GlobalTranz was "negligent in selecting Global Sunrise" as the motor carrier and that Global Sunrise was the one "negligent in its entrustment of a tractor-trailer" to an unsafe driver. Ye's allegations mirror practical realities: GlobalTranz does not own or operate motor vehicles like Global Sunrise does. Seeing the connection between GlobalTranz as a broker and motor vehicle safety requires an extra link to connect the alleged chain of events: GlobalTranz's negligent hiring of Global Sunrise resulted in Global Sunrise's negligent entrustment of a motor vehicle to a negligent driver who, in turn, caused a collision that resulted in Shawn Lin's death.

14

*Id.* at 461-62. The court, therefore, agreed with the district court that "the connection here—between a broker hiring standard and motor vehicles—is too attenuated to be saved under § 14501(c)(2)(A)." *Id.* at 462.

Upon consideration, the Court stands by its decision and reasoning in *Loyd* and, in turn, follows the decisions reached by the Seventh Circuit in *Ye* and the Eleventh Circuit in *Aspen American* (as well as Judge Fernandez's dissent in *Miller*). That is, "Plaintiff's proposal is contrary to Congress' intent in providing specific exceptions to federal preemption; such a broad reading would allow the exception to swallow the rule of preemption related to brokers' services." *Loyd*, 416 F. Supp. 2d at 1299. Plaintiff's claims, therefore, do not fall within the scope of § 14501(c)(2)'s safety exception. *See Ye*, 74 F.4th at 462 ("It is difficult to conclude that the same Congress that prescribed specific—often itemized—regulations for motor vehicle safety intended something broader than 'motor vehicle' in a safety exception that immediately follows an express preemption provision regulating "motor carriers." So we draw the line where Congress did—at state safety regulations directly related to 'motor vehicles.'").

### III. Plaintiff fails to plead sufficient factual allegations to state a vicarious-liability or negligent-selection claim.

As detailed above, Plaintiff's claims against RXO are expressly preempted and not saved by the FAAAA's safety exception. But even if that were not the case, and for the same reasons set forth in the Court's Order on Flex's Motion to Dismiss, Plaintiff's Complaint fails to plead sufficient factual allegations to state a claim against RXO. *See*

15

8/13/2024 Order [Doc. No. 71] at 4-11. The Court incorporates its analysis of Plaintiff's claims from the August 13, 2024 Order as if fully set forth herein.[5]

## CONCLUSION

For the reasons explained herein, Plaintiff's claims against RXO are expressly preempted by § 14501(c)(1) of the FAAAA and not saved by the safety regulatory exception in § 14501(c)(2)(A). Additionally, Plaintiff's Complaint does not include sufficient factual allegations to state a claim against RXO for vicarious liability or negligent selection.

**IT IS THEREFORE ORDERED** that RXO's Motion to Dismiss [Doc. No. 58] is **GRANTED**. Plaintiff's vicarious-liability and negligent-selection claims against RXO are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that XPO NLM, Inc., XPO, Inc., XPO Logistics Freight, Inc., and XPO Logistics, Inc. are **DISMISSED** from this case without prejudice.

**IT IS SO ORDERED** this 14th day of August, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[5] Plaintiff asserts a vicarious-liability and negligent-selection claim against both RXO and Flex. *See* Compl., ¶¶ 40-52 (RXO), 53-64 (Flex). Although there are minor differences in Plaintiff's allegations as to each Defendant, all four claims are factually deficient.